All right. Good morning, Mr. Valima. I see you reserved two minutes for rebuttal. You can begin whenever you're ready. Yes, please. Good morning, and may it please the Court. Ms. Fausel was a woman in her 50s who had a boyfriend who introduced her to Marcos Pappas, who was a previous federal felon. And at some point, her boyfriend goes missing. To date, I believe he still has not been found. But he either way goes missing, under whatever circumstances that was. She then gets kicked out of the place she has where she was. I mean, I certainly understand that there's some mitigating circumstances that are relevant here.  But it also seems clear to me, at least, that the district court considers those factors and thought that in light of the totality of circumstances, it was appropriate to sentence your client to a term of imprisonment within the guidelines. We need to hear why that was unreasonable. Yes, I believe it was unreasonable in terms of there were a number of mitigating circumstances. She nevertheless receives a sentence that's above the middle of the guidelines. And one question is if they were properly weighted, and she did not have these relatively rare circumstances. Maybe not all are unique, but they are rare. She needs a new hip. She is in a wheelchair. She was homeless at the start of the conduct in this case. Are we in a position where it's a matter that we can do the reweighing? Is that appropriate for us under our standards? I think you can determine whether or not the ultimate sentence is substantively reasonable in light of all those factors. As long as we don't reweigh each individual factor. Correct. There's no procedure where, as Judge Perez pointed out, the district court clearly considered the mitigating factors, right? You can see that, right? They're matching. They just don't like the way that the district court weighed them. And what our law says is that we don't reweigh them as long as the factors that led to the sentence are sufficient to carry the weight. It's not a shockingly high sentence. It's okay. It's not substantively unreasonable. So the district court here said your client had over 800 grams of cocaine, 171 grams of fentanyl in pill form, and over $90,000 in cash, and that she was essentially the point person at this Dash House hotel room. So why is a sentence of 42 months, which is in the guideline, doing shockingly high for that type of criminal conduct, even with the mitigating factors? Correct. They're important mitigating factors that I think are very – but nevertheless, I understand our case law says that the district court is often the best positioned to weigh those factors and evaluate them. But I do believe this is a shockingly high sentence under the circumstances. And there – our case law also says that within the guidelines, even though most sentences within the guidelines, and that's Rita, Lawrence – But why is it shockingly high? Just because someone has health issues and is in her late 50s, does that make a sentence shockingly high for someone who's involved in this criminal conduct? Is that what you're suggesting? Well, it's for someone who's 59 years old, without any record, to receive 40 percent. And I – the government argues this is not much above the JSAN average. But she received 40 percent above the JSAN average. I know, but that number is for an offense that involves primarily cocaine. And the district court specifically said here, this isn't just cocaine. This is fentanyl. So that 30-month average does not take into fact that this case involved fentanyl. And you would agree that a judge can decide that fentanyl is a more dangerous substance than powdered cocaine, right? Is that an abusive discretion where a judge can say, you know – and he said it. When on a point, he specifically said, this is not just cocaine. This is fentanyl.  Our courts have said that previous cases involving fentanyl is a proper consideration for this court. No, I don't think – I don't think anybody would dispute the fact that it might have been reasonable for the district court to give your client a lower sentence. The question we are here is why was it – why – and I do need some specificity, please. Why it was unreasonable to get the sentence that you got. Because the district court judges can weigh things, and they can determine things, and they can decide that some factors outweigh others or they're mitigating factors. And I think, you know, we wouldn't – you know, we would be hard-pressed to find a reason to overrule a decision that was considerably lower than this. But the question is, is why do we have to overrule this one? I do think it's outside the bounds of what is substantively reasonable, which was an argument I did make at sentencing that I believe the 42 months would be not substantively reasonable. I think the court put too much emphasis – there was a lot of emphasis on her – there was almost a punishment for how sort of – how unassuming she was in the conspiracy. There was discussion about that Mr. Pappas is sophisticated. This is on page 31 to 32 of the transcript. That Mr. Pappas was sophisticated, and therefore he's using her because she seems like she's unassuming. She's almost getting extra general deterrence punishment because she's someone that Mr. Pappas identified as someone that's useful to the conspiracy because of her lack of record, because of her other characteristics. Well, she didn't have a complete lack of record, right? I mean, she had three – three charges from the age of 29 to 31. Grant, albeit, you know, she's now 59, but we're not talking about someone – this isn't her first brush with the law. The only charge that was possibly pursued to the end of the case, and there's no information on whether or not it was, was the 1995 arrest for possession of marijuana. The others were not prosecuted or nullied. The – all right. There's the credit card and the failure to appear. Those were not referred to the prosecution, and those were nullied. The only one possibly that was pursued was – But, I mean, you're not – you're suggesting – when I think of someone, this is her first offense or someone with no criminal record, I think of someone with no criminal record at all. I think it is no criminal – I think I would position that that's no criminal record. We have no evidence of convictions other than a hypothetical possible conviction in 1995 for possession of marijuana. I think it should be – I don't understand the argument that – I didn't see the district punisher for being unassuming. It was based upon the role that she played. In addition to the drugs, the nature of the drugs, it was that she played a key role. You even – from your brief, this is what you wrote. She often – first of all, you acknowledge this is a large-scale drug conspiracy that she was a part of, right? Correct. She often communicated with Pappas on tap phone calls to update him on deliveries and other movements of drugs to and from her motel room. So this isn't someone who's just saying, yeah, go ahead, put the drugs there. It had nothing to do with the operation. She was actually involved in the operation to and from the motel room. She is on the phone with him frequently. One of the discussions was the level of trust placed in her, and that was a – that's something that the court seemed to put a lot of weight into in terms of that she was trusted by Mr. Pappas. But that alone is not necessarily a reason for a higher punishment. People can come across trust by different ways, whether it be their family. Exactly, but that's my – that was my first question. Like, I mean, no one I think is disputing that it might have been reasonable to come up with a lower sentence. The question is, is why are we compelled to find that it had – that it needed to be a lower sentence in order for it to be substantively reasonable? That goes to, I think, the – in terms of looking at the 3553A factors, the government conceded it was a lower citizen risk, page 37 of the sentencing transcript. The aspect of – and again, the aspect of her being homeless and in a wheelchair go to her history and characteristics. Those factors were not – the sentence does not reflect something that's within the bounds of what's reasonable. And I think that bound could have gone down well below the 30 months that was the appellate waiver, well below the 30 months of the JSIN, but I think that bound stops before. In one of her papers, I think you'll concede here that 30 – you wouldn't say 30 months was a shockingly high sentence, right? That may be more than you think is warranted, but you certainly concede that 30 months wouldn't be substantively reasonable. I think treating her as the – an average defendant with all of the factors in play would have been the high bound of what would have been a substantively reasonable sentence. Anything above 30 months is shockingly high is your position. I don't know exactly where it was between 30 and 41 – 42 months, but I think it was shortly after 30 months it becomes shockingly high. Thank you. Thank you, Your Honors. Good morning. Assistant U.S. Attorney Catherine Boyles, appearing on behalf of the United States. May it please the Court. The district court's 42-month sentence was substantively reasonable. The district court properly considered the nature and circumstances of Ms. Fousel's participation in a conspiracy to possess with the intent to distribute cocaine and fentanyl, specifically that she personally possessed more than 800 grams of cocaine and more than 170 grams of fentanyl pressed to look like legitimate pharmaceuticals. She held roughly $94,500 in cash for a drug trafficking organization, and she actively coordinated out-of-state drop-offs as contraband from unindicted co-conspirators. What are we supposed to make of the argument that she was uniquely vulnerable and that she was taken advantage of by people leading the conspiracy? Your Honor, I think that's an issue that the district court clearly confronted and weighed and considered. There were arguments both at sentencing and in the record about sort of that cuts both ways. On the one hand, she is uniquely vulnerable, but on the other hand, when we think about the importance of general deterrence and specific deterrence, not just as to Ms. Fousel but the co-defendants in this case, deterrence is important to making sure that these potentially uniquely situated vulnerable defendants are not taken advantage of because there is some perception that they may not be punished. She is also going to be punished for her active and considerable role in this particular conspiracy. What about the low recidivism rate? Was that given enough weight? Your Honor, I think whether or not— What's that risk, low recidivism risk? That was, again, put before the district court, and this court's review is very clear that once the court has considered that, there's very little for this court to say once the district court has properly considered that in the full mix of 3553A factors. It was put before the district court. The district court weighed it along with all of the other factors at issue in this case. This is an experienced district court judge who was responsible for overseeing this 14 defendant case. I'm sorry, but it was higher than the national average, right? That's true, Your Honor. And so while not dispositive, that should give us some pause, would you agree? I would agree that it should give us some pause, and I think it gave the district court judge certainly something to think about. It is included in our PSRs in our district. But again, the district court is not just considering the national averages, but also this defendant, though he was not required to, he considered this defendant in relation to the other defendants in this case to date. Yeah, let me ask you about that because I was going through the various defendants, and although a judge doesn't have to consider co-conspirators, co-defendants, if the judge does, then we look at it, right? Yes, Your Honor. So, you know, the judge explained Potraeus being different. Yes. I understand that, but I was looking at some of the other ones like, you know, Mr. Levin pointed in his papers that Mr. Pepe had a firearm. He got the management in on 60 months, but, I mean, you can see that his conduct, his criminal history was far worse than this defendant, right? Yes, Your Honor. And so, I mean, I can't. And Jocelyn, actually, let me focus on Jocelyn for a moment, 34 months. So Mr. Jocelyn distributed thousands of, I think you said in your sentencing letter, 1,800 counterfeit oxygen pills from Taylor. Yes, Your Honor. His guideline range was 46 to 57 months. He had extremely serious and violent crimes, including kidnapping and homicide. Yes, Your Honor. And somehow he got a parole guideline sentence of 34 months. So can you explain that one? Thank you for that opportunity, Your Honor. So Mr. Jocelyn's case is, I think, emblematic of this district court judge's defendant in this case. So Mr. Jocelyn's case did have 1,800 fentanyl pills that he was personally involved in purchasing or middling deals for. Those 1,800 pills converted to approximately 240 grams of converted drug weight. So we have him dealing 240 grams of fentanyl pressed to look like oxycodone, and we have Ms. Fausel who had, on a given day in February, she had roughly 170 grams of fentanyl plus the 800 grams of cocaine. So those are the drug weights. So already he does have more in terms of fentanyl, but she also has the cocaine, mandatory minimum quantities of cocaine. Mr. Jocelyn's case, though, was very different from Ms. Fausel's because Mr. Jocelyn chose to participate in the District of Connecticut Support Court Program. And not only did he participate and successfully complete that program, which is a rehabilitation program, for over a year, he received some of the highest marks and the most complimentary remarks I've heard from a probation officer who submitted a special letter on behalf of Mr. Jocelyn. And so the government's recommendation in that case, in light of his extraordinary rehabilitation, was to take a year off the bottom of his guidelines. I also wanted to address the point of his criminal history. He did have a prior conviction for homicide, and the district court very seriously considered that. His criminal history, however, was primarily very outdated. It was from the 1980s and 90s, and most of it had not scored in the guidelines. So hers was also very dated. Yes, Your Honor. And she wound up not being charged for some of those arrests, or the charges were not let her drop. Yes, Your Honor. And I think this conversation brings us back to the point where it is the district court's job to weigh all of these different facts and factors. Look, I'm not suggesting that Mr. Jocelyn, it sounds like, you know, there were strong mitigating factors that warranted the 34-month sentence below the guidelines, but the question is, well, you know, just because she didn't have a drug problem that required rehabilitation, should she get higher than him even though she had health issues and she had her own mitigating factors? You would think that she might have a similarly reduction from the guideline rates that Mr. Jocelyn had for her own mitigating factors even if they don't match up completely. There are similar mitigating factors, but there is a very different level of role in the conspiracy. So they were charged in the same case, but we're talking actually about two separately charged conspiracies. They were overlapping, but those two defendants were charged in account one versus account two, excuse me, conspiracy. So Mr. Jocelyn's role in account one conspiracy was he was – he did certainly admit to participation in the conspiracy with possession with intent to distribute, but his relationship was fairly low level in the conspiracy. He was dealing to just a couple of other end users who were also drug-addicted persons, whereas Ms. Fausel is not a drug-addicted person. She's not doing this to fuel her own drug habit, and rather she's coordinating these out-of-state drop-offs of kilogram quantities of cocaine and fentanyl. So the government and I think the district court just sees those two defendants very differently from an end user and someone who's dealing with two other end users, someone who's coordinating these kilogram quantities that are coming in and out of the state and then holding on to those drugs both for – and the messages that we highlighted in our memo below highlight that she's part of packaging those drugs for redistribution, and then she's actually holding on to the cash proceeds from the drug sales. So I think, Your Honor, I understand that there's certainly similarities between Ms. Fausel and Mr. Jocelyn, but there's also these distinguishing factors between their relevant roles in the conspiracy and ultimately the drugs that they – Is it part – if you complete that program, there'll be a letter to the judge? How does that work? So typically, Your Honor, that program actually results in – or the orientation handbook suggests to defendants that if the defendant successfully completes support court, they may be entitled to one year off of their supervised release, or if they complete the program pre-sentencing, the judge may consider it. So in this case, the government took the position because there was such extraordinary rehabilitation. This was a person that was mentoring other people in our community, volunteering at a food pantry, and really trying to contribute and really turning his life around because of this extraordinary rehabilitation, which is out of the norm for support court. We weren't just recommending a year less of supervised release. We were recommending a year less from the bottom of the guidelines for the incarceratory sentence. If there are no further questions, we would ask the Court to affirm. All right. Thank you. Thank you. All right, Mr. Looney, you may have two minutes in rebuttal. Thank you.  I will respond regarding Mr. Jocelyn. The State of Connecticut does have a support court program for drug-addicted persons who can participate post-sentencing or post-sentence or pre-sentence. If they do participate pre-sentence, there's a procedure for them to have a year-long sort of pause in their sentencing schedule for that. And I understand Mr. Jocelyn got some consideration for that. Ms. Fausel was – there is no program for people who need cognitive behavioral therapy because they've been the victim of abuse numerous times in their past and they were homeless and had those issues going on. Connecticut does not have that program available. So she was in a more unique circumstance. Her background was more unique than perhaps some of the typical defendants. And I don't think that background was – that it was provided with appropriate weight. And if you look at that, the fentanyl was over-weighted by the judge. They said – the government argues that everything was considered by the judge, but it still needs to be able to bear the weight the judge assigned to it. And a counterfactual would be the important way to look at that, which is it was a middle-of-the-guideline sentence, if not for Ms. Fausel's relatively rare history in terms of the abuse that she suffered that can be tied to her decision-making in this case, her physical health, her advanced age, other than her homeless – the fact that she was homeless. If not for those factors, was the sentence going to be 70, 80, 90 months? If they were provided proper weight and the fentanyl was provided proper weight, if not for those rare factors, the sentence would have been well above the guidelines, it seems like, because certainly you would have needed to justify then an upward departure, an upward variance in that case. And so I think the court can determine that the factors were not provided with the weight that – did not support the weight that Judge Williams provided them, based on a counterfactual of taking the rare factors out and then considering what a sentence would have been in that case for Ms. Fausel. It would have been well above the guidelines. I don't think that would have been supportable. So I don't think that the weighting of these factors was appropriate. Thank you. I'd ask for the sentence to be vacated up to the level of the appellate waiver. Thank you. Thank you, Ms. Fausel. It was a reserved decision. Have a good day.